IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| SHADEE ALEXANDER,<br><br>        Petitioner,<br><br>    v.<br><br>WILLIE BOND and ATTORNEY GENERAL OF THE STATE OF NEW JERSEY,<br><br>        Respondents. | HON. JOHN MICHAEL VAZQUEZ<br><br>Civil Action<br>No. 16-1903 (JMV)<br><br>**OPINION** |

**VAZQUEZ, District Judge:**

## I.    INTRODUCTION

Presently before the Court is the petition pursuant to 28 U.S.C. § 2254 ("the Petition") (ECF No. 1) of Shadee Alexander ("Petitioner" or "Alexander"). Petitioner is currently incarcerated at South Woods State Prison in Bridgeton, New Jersey, where he is serving an extended term of thirty years' imprisonment for first-degree robbery, subject to an eighty-five percent parole ineligibility period under the No Early Release Act ("NERA"), N.J. Stat. Ann. § 2C:43-7.2. In addition, the trial judge sentenced Petitioner to a concurrent five-year term for possession of a handgun without a permit, along with fines, penalties, fees and assessments. (ECF No. 8-3.)

For the reasons stated herein, the Court denies the Petition with prejudice, and no certificate of appealability shall issue.

## II.    BACKGROUND

In written opinions during direct appeal and post-conviction relief ("PCR") proceedings in Petitioner's case, the Appellate Division of the Superior Court of New Jersey ("Appellate

Division") summarized the facts underlying Petitioner's conviction as follows:[1]

On March 29, 2008, three men entered a delicatessen in Orange, New Jersey owned by Mr. and Mrs. McElveen and announced their intention to commit a robbery. Two of the men brandished guns. One man, wearing a black scarf with balls on its ends, stuck his gun in Mrs. McElveen's face. Mrs. McElveen opened the cash register. The perpetrators ordered the McElveens and their nine-year-old granddaughter to lie down on the floor. One of the men threatened to take the granddaughter if the McElveens did not produce more money. Eventually, the men left the store with cigarettes, cigars, lighters, the cash register's change tray, and cash taken from Mr. McElveen's pants pockets and the register. *State v. Alexander*, No. A-1360-13T1, 2015 WL 2457985, at *1 (N.J. Super. Ct. App. Div. Jan. 22, 2015); ECF No. 8-2 at 3.

Police subsequently spotted a car that matched the description that Mr. McElveen gave. (*Id.*) Detectives responding to the 911 call saw a Honda, matching the description provided on the radio transmission, pass them and pull into a convenience store's parking lot. *State v. Alexander*, 2011 WL 6029980, at *1 (N.J. Super. Ct. App. Div. Dec. 6, 2011). Two of the men, Robert Wilson ("Wilson") and Kashif Holt ("Holt"), exited the front seat and approached the store. The third person, Petitioner, remained in the back seat, *id.*, where police observed a cash register drawer, currency, and a black scarf with balls. *Alexander*, 2015 WL 2457985, at *1. Police arrested and searched Wilson, Holt, and Petitioner. *Alexander*, 2011 WL 6029980, at *1. Wilson had several cigars, two lighters, and approximately $200 in crumpled bills in his pocket. The cigars and lighters had barcode stickers that were later used to identify the items as merchandise from the McElveens'

---

[1] State court factual findings are presumed correct unless rebutted by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1). As Petitioner has not rebutted the factual findings of the Superior Court of New Jersey by clear and convincing evidence, this Court relies on those findings.

store. Although Mr. McElveen was unable to identify any of the suspects, he identified the car and the black scarf with balls worn by the man who held the gun to his wife's face. *Alexander*, 2015 WL 2457985, at *1.

At trial, Petitioner did not testify. Instead, he presented an alibi defense, relying on the testimony of Wilson and Petitioner's sister, Nafeesah Alexander ("Ms. Alexander"), who said they were all together at a house-party when the robbery occurred. *Id*. at *2. According to Wilson and Ms. Alexander, Petitioner, Wilson, and Ms. Alexander left the house party sometime after 9:30 p.m. *Alexander*, 2011 WL 6029980, at *3.

The jury found Petitioner and Wilson guilty of second-degree conspiracy to commit robbery, first-degree robbery, third-degree receiving stolen property, second-degree possession of a handgun without having obtained a permit, and second-degree possession of a firearm with the purpose of using it unlawfully against another. Holt pled guilty to hindering apprehension. He testified on the State's behalf in accordance with a plea agreement that called for his release on probation following his testimony. *Id*. at *1.

The sentencing judge merged Petitioner's and Wilson's convictions for conspiracy, receiving stolen property and possession of a firearm for an unlawful purpose with their convictions for first-degree robbery. Alexander's prior convictions qualified him for a discretionary term pursuant to N.J. Stat. Ann. § 2C:15-1(a)(1). The judge sentenced him to a thirty-year extended term for first-degree robbery, subject to periods of parole ineligibility and supervision required by NERA, N.J. Stat. Ann. § 2C:43-7.2. In addition, Petitioner received a concurrent five-year term for possession of a handgun without a permit. *Id*. The judge sentenced Wilson to an eighteen-year term of imprisonment for robbery, subject to NERA periods of parole ineligibility and supervision; and to a concurrent five-year term for possession of a handgun

3

without a permit. *Id*.

The Appellate Division consolidated Petitioner and Wilson's (collectively, "Co-Defendants") separate appeals and affirmed the their convictions and sentences. *Id*. at *1, *11. Petitioner filed a PCR application. (ECF No. 8-11; ECF No. 8-12.) The Law Division of the Superior Court of New Jersey denied relief on May 30, 2013. (ECF No. 8-13.) Petitioner appealed. (ECF No. 8-14.) The Appellate Division affirmed denial of PCR. *Alexander*, 2015 WL 2457985, at *5. On October 29, 2015, the New Jersey Supreme Court denied certification. *State v. Alexander*, 124 A.3d 239 (N.J. 2015).

On March 22, 2016, Petitioner filed his § 2254 Petition by placing it into the prison mail system. (ECF No. 1 at 22.) He asserts four claims: (1) the trial court erred in allowing the State to cross-examine his sole alibi witness on her failure to share her alleged exculpatory information with police; (2) the trial court erred in denying his request to submit to the jury a transcript of Holt's statement to the police; (3) the trial court improperly limited his co-defense counsel's evidentiary presentation at trial; and (4) his sentence is manifestly excessive. (*Id*. at 7-8.) On June 15, 2016, this Court ordered Respondents to answer the Petition (ECF No. 4), which they filed on September 26, 2016. (ECF No. 8.)

## III. STANDARD OF REVIEW

Section 2254(a) permits a court to entertain only claims alleging that a person is in state custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Petitioner has the burden of establishing each of his claims. *See Eley v. Erickson*, 712 F.3d 837, 846 (3d Cir. 2013). Under 28 U.S.C. § 2254, as amended by the Anti–Terrorism and Effective Death Penalty Act, 28 U.S.C. § 2244 ("AEDPA"), federal courts in habeas corpus cases must give considerable deference to determinations of the state trial and appellate courts. *See*

*Renico v. Lett*, 599 U.S. 766, 772 (2010).

28 U.S.C. § 2254(d) provides as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Where a state court adjudicated petitioner's federal claim on the merits, a federal court "has no authority to issue the writ of habeas corpus unless the [state c]ourt's decision 'was contrary to, or involved an unreasonable application of, clearly established Federal Law, as determined by the Supreme Court of the United States,' or 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Parker v. Matthews*, 567 U.S. 37, 40 (2012) (quoting 28 U.S.C. § 2254(d) ). The petitioner carries the burden of proof, and review under § 2254(d) is limited to the record that was before the state court that adjudicated the claim on the merits. *See Harrington v. Richter*, 562 U.S. 86, 98, 100 (2011).

"[C]learly established law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the *dicta*, of [the Supreme Court's] decisions," as of the time of the relevant state-court decision. *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014) (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000) ). A decision is "contrary to" a Supreme Court holding within § 2254(d)(1) if the state court "contradicts the governing law set forth in [the Supreme Court's] cases" or if it "confronts a set of facts that are materially indistinguishable from a decision of th[e Supreme] Court and nevertheless arrives at a [different] result." *Williams*, 529 U.S. at 405–06. Under the "'unreasonable application' clause of § 2254(d)(1), a federal habeas court may grant the writ if the

state court identifies the correct governing legal principle from th[e Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. With regard to § 2254(d)(1), a federal court must confine its examination to evidence in the record. *See Cullen v. Pinholster*, 563 U.S. 170, 180-81 (2011).

Where a petitioner seeks habeas relief, pursuant to § 2254(d)(2), on the basis of an erroneous factual determination of the state court, two provisions of AEDPA apply. First, AEDPA provides that "a determination of a factual issue made by a State court shall be presumed to be correct [and t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *Miller–El v. Dretke*, 545 U.S. 231, 240 (2005). Second, AEDPA precludes habeas relief unless the adjudication of the claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

## IV. ANALYSIS

The same habeas legal principles govern Grounds One, Two, and Three of the Petition. The Court first summarizes the governing law and then addresses it in the context of each of Grounds One, Two, and Three.

### A. State Court Evidentiary Rulings Are Not Reviewable On Habeas Unless They Were Fundamentally Unfair At Trial In Violation Of Due Process.

An erroneous evidentiary ruling is not itself grounds for habeas relief. To rise to the level of a constitutional violation, a state court's evidentiary decision must have been so arbitrary or prejudicial that it rendered the trial fundamentally unfair, thereby violating a petitioner's due process rights. *See Romano v. Oklahoma,* 512 U.S. 1, 12-13 (1994); *see also Keller v. Larkins,* 251 F.3d 408, 413 (3d Cir. 2001) (to show that an evidentiary error rises to the level of a due process violation, a petitioner must show "that it was of such magnitude as to undermine the fundamental

fairness of the entire trial"); *Kontakis v. Beyer,* 19 F.3d 110, 116-17, 120 (3d Cir. 1994)
(evidentiary rulings at trial are not subject to habeas review unless the ruling "caused 'fundamental
unfairness' in violation of due process"; furthermore, an evidentiary ruling does not give rise to
federal habeas relief unless it had a "substantial and injurious effect or influence in determining
the jury's verdict") (citing *Lisenba v. California*, 314 U.S. 219, 236 (1941) and *Brecht v,
Abrahamson,* 507 U.S. 619, 623 (1993)). The United States Supreme Court has "defined the
category of infractions that violate 'fundamental fairness' very narrowly." *Dowling v. United
States,* 493 U.S. 342, 352 (1990).

In short, matters of state law and rules of procedure and evidence are generally not
reviewable in a federal habeas petition. The United States Supreme Court has stated that "it is not
the province of a federal habeas court to reexamine state-court determinations on state-law
questions." *Estelle v. McGuire,* 502 U.S. 62, 67-68 (1991). Federal courts must afford the states
deference in their determinations regarding evidence and procedure. *See Crane v. Kentucky,* 476
U.S. 683, 690 (1986). It is well-established that "a state court's misapplication of its own law does
not generally raise a constitutional claim. The federal courts have no supervisory authority over
state judicial proceedings and may intervene only to correct wrongs of constitutional dimension."
*Smith v. Horn,* 120 F.3d 400, 414 (3d Cir. 1997) (citations omitted), *cert. denied,* 522 U.S. 1109
(1998).

**B.  Ground One: Cross-Examination Of Petitioner's Alibi Witness.**

Petitioner argues that the trial judge erred in allowing the State to cross-examine
Petitioner's sole alibi witness, Ms. Alexander, about her failure to share her alleged exculpatory
information with the police. (ECF No. 1 at 7 ("Alibi Witness Claim").) Ground One makes two
sub-claims as to (1) the trial judge's rejection of a preliminary hearing to establish foundation for

Ms. Alexander's cross-examination, and (2) cross-examination about Ms. Alexander's alibi non-disclosure after Petitioner filed a notice of alibi.

During trial, the parties' attorneys agreed that Ms. Alexander would testify that she gave the alibi information to the police on the night of the arrest at the convenience store and again at police headquarters; and admit that she did not follow up thereafter because she did not know what to do. *Alexander*, 2015 WL 2457985, at *5. On that proffer, the trial judge determined that it was obvious Ms. Alexander knew the alibi information was important and how to convey it because she had done so. The trial court further determined that it would have been natural for her to make additional efforts to exonerate Co-Defendants after formal charges were filed. On those findings, the court concluded that there was no need for a preliminary hearing regarding the permissibility of an inference of inconsistency from silence. *Id*. On that basis, the Honorable Michael Petrolle, J.S.C. rejected the request to lay the foundation for Ms. Alexander's cross-examination via a hearing. *Id*. The proffer had already established the foundation.

At trial, Ms. Alexander's direct testimony was consistent with the proffer and confirmed the foundation for the cross-examination. She testified that she was with Wilson and Alexander at a party on the night of the robbery, and they did not leave until after 9:30 p.m. Minutes after they left, she received a phone call and went to the convenience store. There, she approached an officer and told him that Co-Defendants had been with her and had just left the house. The officer directed her to step away and told her that the Co-Defendants were being taken to police headquarters. She drove there, learned that Co-Defendants were arrested, and told an officer they could not have committed the crime because they were not there. *Alexander*, 2011 WL 6029980, at *6.

On cross-examination, the prosecutor established Ms. Alexander's relationship with the Co-Defendants and her interest in seeing them exonerated. Without objection, the prosecutor asked

Ms. Alexander if she returned to the police station during the months between the arrest and Petitioner's filing of the notice of alibi. Ms. Alexander said she did not "know the system" and was "just waiting for someone to contact" her. The prosecutor, again without objection, asked her if she had gone to the prosecutor's office during the same period. She said that she had not. *Id*.

Petitioner raised the Alibi Witness Claim on direct appeal. *See Alexander*, 2011 WL 6029980, at *4. Rejecting his claim, the Appellate Division found "no error" in the cross-examination of Ms. Alexander. *Id*. First, the Appellate Division noted that under the state law "principles, procedures, and rule" of *State v. Silva*, 621 A.2d 17 (N.J. Super. Ct. App. Div. 1993), "[a]n alibi witness, like any other witness, may be cross-examined with a view to demonstrating the improbability or even fabrication of his testimony." *See Alexander*, 2011 WL 6029980, at *4-5 (citing *Silva*, 621 A.2d at 20). The Appellate Division's careful scrutiny of *Silva* was indispensable to the court's sound consideration of Petitioner's Alibi Witness Claim, so this Court will briefly summarize it here. The witness's silence gives rise to an inference of inconsistency when the circumstances permit a finding that it would have been "reasonably natural" for the alibi witness to come forward with information. *Silva*, 621 A.2d at 22. After laying the proper foundation, the prosecution may cross-examine an alibi witness's pre-trial silence. *Id*. When the trial court finds that an alibi witness "appears to know of the charges and would naturally be expected to have come forward with the alibi testimony, the witness may be cross-examined about those circumstances of non-disclosure." *Id*. at 19. It may generally be inferred that the witness would know how to report the information to law enforcement authorities. *See State v. Holden*, 837 A.2d 403 (N.J. Super. Ct. App. Div. 2003). A proper foundation for alibi witness cross-examination exists where the witness testifies that he or she: was "aware of the nature of the charges against the defendant; had reason to know he had exculpatory information; had reasonable

motive to act to exonerate the defendant; [and] was familiar with the means to make the information available to law enforcement authorities[.]" *Silva*, 621 A.2d at 22. *See Alexander*, 2011 WL 6029980, at *4-5.

The Appellate Division then described the fact-driven nature of the *Silva* rules' application. "[Based on] the factual circumstances …, the trial court must determine whether the jurors could reasonably infer that the witness's prior recalcitrance is inconsistent with the witness's testimony, which is a question 'of logic and common sense.'" *Alexander*, 2011 WL 6029980, at *5 (internal citations omitted).

The Appellate Division acknowledged the exception to *Silva*'s general rule:

> *Silva*['s] one firm rule limiting cross-examination about non-disclosure …' includes an exception. "[O]nce a notice of alibi had been furnished by defendant's attorney, thereby making the witness available to questioning by prosecution investigators, there is, from the date of notice of alibi to trial, no longer an inconsistency from which to infer fabrication unless the witness refuses to discuss the matter with the prosecution after the notice of alibi."
>
> [W]hen cross-examination about delayed disclosure is permitted, the trial court should instruct the jury "that an alibi witness has no duty to communicate with the authorities and that the witness's silence is relevant only for impeachment of credibility[.]"

*Alexander*, 2011 WL 6029980, at *5 (citing *Silva*, 621 A.2d at 19, 24).

The Appellate Division then applied this *Silva* framework to the defense's two specific arguments about Ms. Alexander's cross-examination, as described below.

### 1. Failure to Conduct A Preliminary Hearing For Establishing A Foundation For The State's Cross-Examination Of Petitioner's Alibi Witness.

First, Petitioner's direct appeal argued the trial court erred because it denied [his] request for a preliminary hearing outside [juror's] presence" to establish foundation for Ms. Alexander's cross-examination ("Preliminary Hearing Claim"). *Alexander*, 2011 WL 6029980, at *5.   The

Appellate Division rejected the Preliminary Hearing Claim for several reasons: (1) *Silva* does not require a preliminary hearing in every case; (2) it was "obvious [Ms. Alexander] knew the information was important and how to convey it [to police] because she had done so"; and (3) it would have been "natural" for her to make additional efforts to exonerate Co-Defendants after formal charges were filed. *Alexander*, 2011 WL 6029980, at *5. On those findings, Judge Petrolle concluded there was no need for a preliminary hearing to establish the foundation for Ms. Alexander's cross-examination. *Id*. Thus, the Appellate Division ruled that trial court did not abuse its discretion in permitting Ms. Alexander's cross-examination on undisputed proffers outside the jury's presence.

Based on the record and governing habeas law, Petitioner's Preliminary Hearing Claim does not merit habeas relief. He has not demonstrated that Judge Petrolle's rejection of a preliminary hearing in lieu of undisputed proffers outside the jury's presence -- in order to establish the foundation for Ms. Alexander's cross-examination -- rendered his trial fundamentally unfair. At trial, Ms. Alexander's direct testimony was consistent with the proffer and confirmed the foundation for the cross-examination. The Appellate Division noted this very point. *Alexander*, 2011 WL 6029980, at *2, *6 (parsing through *Silva*'s requirements as applied to the record before it, finding that the undisputed proffer was "adequate," and ruling that Co-Defendants "were in no way prejudiced by the foregoing cross-examination or the court's decision to proceed without an evidentiary hearing"). In fact, the Appellate Division noted: "If anything, the prosecutor's questions gave the witness an opportunity to reiterate and stress her prior consistent statements, which could have only aided the defense by serving to rebut any inference of recent fabrication." *Id*.

The Appellate Division concluded that "the principles, procedures and rule established in

*Silva* were followed here." *Alexander*, 2011 WL 6029980, at *4. Petitioner has not shown that observation of those state protocols had a substantial and injurious effect or influence in determining the jury's verdict. His Petition as to the Preliminary Hearing Claim merely imports verbatim the two pages from the Appellate Division's December 6, 2011 written opinion on this issue. (*Cf.* ECF No. 7-8; *Alexander*, 2011 WL 6029980, at *4.) Petitioner has failed, though, to demonstrate that portion of the Appellate Division's opinion was an unreasonable application of clearly established federal law. He provides no specifics whatsoever to carry his burden of showing that a proffer outside the jury's presence -- instead of a preliminary hearing -- to establish the cross-examination's foundation in fact violated his due process rights. (ECF No. 1 at 7.) He cites to no United States Supreme Court precedent that required the state courts to implement a preliminary hearing for purposes of the cross-examination's foundation. (*Id.*) The Court denies habeas relief as to the Preliminary Hearing Claim portion of Ground One.

### 2. *Silva*'s Ban Against Cross-Examining An Alibi Witness About Her Non-Disclosure Of The Alibi After He Filed Of A Notice Of Alibi.

Second, Petitioner's direct appeal argued that Judge Petrolle transgressed *Silva*'s prohibition of cross-examination about non-disclosures after the filing of a notice of alibi. ("Non-Disclosure Claim"). *Alexander*, 2011 WL 6029980, at *6.  At trial, the prosecutor asked Ms. Alexander if they had ever met after Petitioner filed his notice of alibi. Defense counsel did not object. Ms. Alexander testified that they had met. In response to a follow-up question, which also passed without objection, Ms. Alexander admitted that she had agreed to schedule another appointment as well. On further questioning, again without objection, Ms. Alexander acknowledged that two appointments had been made and broken -- one which the detective cancelled, and one which she cancelled due to childcare. The prosecutor then asked Ms. Alexander if she rescheduled the latter appointment. There was no objection, and Ms. Alexander said she did

not recall. She also testified that she had given the prosecutor a statement before she testified at trial. There were no further questions. *Alexander*, 2011 WL 6029980, at *6.

Given that there was no objection during this line of questioning, the trial court had no reason to explain why it permitted the questions about Ms. Alexander's post-notice delay. Presumably, the trial court viewed the questions as an attempt to lay a foundation based on a refusal to talk to the prosecution. *Id*.

The Appellate Division rejected Petitioner's Non-Disclosure Claim, pointing out that Petitioner overlooked the exception to *Silva*'s ban against cross-examination about a witness's non-disclosure of alibi testimony. *Id*. ("[O]nce a notice of alibi had been furnished by defendant's attorney, thereby making the witness available to questioning by prosecution investigators, there is, from the date of notice of alibi to trial, no longer an inconsistency from which to infer fabrication unless the witness refuses to discuss the matter with the prosecution after the notice of alibi") (citing *Silva*, 621 A.2d at 19). The Appellate Division ruled that that the trial court did not abuse its discretion in permitting Ms. Alexander's cross-examination on undisputed proffers outside the jury's presence. *Id*. Ms. Alexander did not give the prosecution a statement until the trial was underway. Since "there is a point when cancellation of an appointment with the prosecutor followed by failure to reschedule is fairly viewed as the functional equivalent of a refusal to speak to the prosecution," the Appellate Division rejected Petitioner's "claim of abused discretion." *Id*.

Upon review of the record, this Court determines that Petitioner has not demonstrated that the state courts' rulings on *Silva* and its exception rendered Petitioner's trial fundamentally unfair. That is, he has not shown that questions about Ms. Alexander's post-notice delay (*i.e.*, the permissible *Silva* exception) had a substantial and injurious effect or influence in determining the jury's verdict. *See Kontakis*, 19 F.3d at 116, 120 (internal citations omitted). Petitioner has failed

to show that the portion of the Appellate Division's December 6, 2011 opinion he includes in his Petition (*see* ECF No. 7-8; *Alexander*, 2011 WL 6029980, at *4) was an unreasonable application of clearly established federal law. He offers no facts demonstrating that Ms. Alexander's cross-examination about alibi non-disclosure in fact violated his due process rights. (ECF No. 1 at 7.) He does not cite any United States Supreme Court precedent that bans cross-examination of alibi witnesses about their alibi non-disclosure after defendant files a notice of alibi. (*Id*.) The Court denies the Non-Disclosure Claim portion of Ground One.

For all of the foregoing reasons, Ground One of the Petition is denied in its entirety.

### C. Ground Two: Not Submitting To The Jury The Transcript Of Holt's Statement To Police.

Petitioner next argues that the trial court erred in denying his request to submit to the jury a transcript of Holt's statement to the police. (ECF No. 1 at 7 ("Transcript Claim").)

The following facts from the state record are particularly relevant to the Transcript Claim: After his arrest, Holt gave the police a statement, which was recorded ("Holt Recorded Statement"). *Alexander*, 2011 WL 6029980, at *3. At trial, Wilson's attorney introduced the Holt Recorded Statement to demonstrate inconsistencies between Holt's trial testimony and Holt's earlier account of events. *Id*. Wilson's counsel marked the Holt Recorded Statement into evidence. (ECF No. 8-28 at 21-22.)

Jurors received the transcript ("Holt Transcript") of the Holt Recorded Statement to follow as they listened to the latter in court. Counsel did not introduce the Holt Transcript into evidence. (ECF No. 8-27 at 81-83.) Judge Petrolle instructed jurors that: their recollection of the Holt Recorded Statement controlled their deliberations; and the Holt Transcript was for their "convenience and to enhance [their] understanding." (ECF No. 8-27 at 82.)

During deliberations, the jurors asked for the Holt Transcript. (ECF No. 8-29 at 61.)

14

Concerned that jurors would rely on the Holt Transcript -- which was not in evidence -- rather than the Holt Recorded Statement, Judge Petrolle denied the jury's request. However, he told them they could listen to the eighteen-minute-long Holt Recorded Statement in the jury room as often as they wished. (ECF No. 8-29 at 62 ("I will not permit them to have the transcript in the jury room as an item in evidence because I do not want them to rely on the transcript. I want them to listen to the tape, that's in evidence, not the transcript").) The trial court said that it was inclined to instead allow the jury to listen to the DVD in the courtroom, while once more using the Holt Transcript as a guide. *Alexander*, 2011 WL 6029980, at *8; ECF No. 8-29 at 62. The court denied counsel's subsequent request to provide jurors with the Holt Transcript, explaining that: the jury did not need anything other than the tape of the Holt Statement; and introduction of the Holt Transcript would risk jurors' reliance on Holt Transcript rather than on the Holt Recorded Statement. (ECF No. 8-29 at 63-64.) The court then called the jury into the courtroom and instructed them as follows:

> Ladies and gentlemen, ... I have your ... inquiry, may we have a copy of the transcript of Holt statement. The Holt statement is in evidence and you have it in the jury room and you can listen to it as frequently as you want to. If you have any difficulty with the audio equipment, the laptop, we can assist you with that.
>
> The transcript is not evidence. It is not in evidence. It was merely a guide. You should rely on the audition of the audio, the DVD that you have with you in the jury room and not on a transcript of it. That transcript may be what the attorneys settled upon or agreed upon, but as I've told you before, that type of thing is not evidence. Their comments are not evidence and you have the original statement itself that is the oral statement in the jury room. And that's the statement that you should rely on.
>
> So, the simple answer to the question although I'm trying to explain why, is that you may not have the written transcript but you do have the audio to rely upon.

*Id*. at 64.

15

Although the jurors asked nine questions after receiving that direction, only one question addressed Holt. Jurors asked for the computer password they needed to access the Holt Recorded Statement. The court had a technical expert demonstrate how to play the recording. There were no further questions. *Alexander*, 2011 WL 6029980, at *8.

On direct appeal, Petitioner argued: "The trial court erred in refusing the jury's request for a copy of the [Holt] [T]ranscript during deliberations despite the fact the tape was marked into evidence and given to the jury while a transcript of its contents had been given to it as an aid when it was played during trial." *Id*. at *4.  The Appellate Division rejected the Transcript Claim, finding "the trial court's reasoning about the evidential value of the transcript" to be "correct." *Id*. at *9 (citing *State v. DeBellis*, 413 A.2d 986 (N.J. Super. Ct. App. Div. 1980) ("no abuse of discretion in giving the jurors the transcript when they were told the transcript was only a guide and the recording was the primary evidence")). The Appellate Division rejected the Transcript Claim also because nothing suggested that jurors had trouble relying exclusively on the Holt Recorded Statement. *Alexander*, 2011 WL 6029980, at *9 ("[G]iven the brevity of the recording and the trial court's direction to bring any problems to its attention, we can presume that the jurors followed the judge's instruction and would have asked for additional guidance if they had difficulty hearing or following the recording").)

As noted above, an erroneous evidentiary ruling is not itself grounds for habeas relief. To rise to the level of a constitutional violation, a state court's evidentiary decision must have been so arbitrary or prejudicial that it rendered the trial fundamentally unfair. *Romano,* 512 U.S. at 12–13; *Keller,* 251 F.3d at 413; *Kontakis*, 19 F.3d at 116, 120.  Petitioner has not met the requisite constitutional showing here.

Petitioner generally claims in conclusory fashion only that "the trial court erred in refusing

the jury's request for a copy of the [Holt] [T]ranscript" (ECF No. 1 at 7), but he does not explain or show *why* that is the case. Such unsupported vagaries do not carry Petitioner's burden to show that denial of the Holt Transcript to the jury had a substantial and injurious effect or influence in determining jurors' verdict. *See Kontakis*, 19 F.3d at 116, 120 (internal citations omitted).  To the contrary, the record undisputedly demonstrates that the transcript was never admitted into evidence.  Thus, Petitioner is essentially arguing that his rights were violated because the jurors were not provided with an item that was not in evidence.  The Court is not aware of any legal authority indicating that failure to provide a deliberating jury with non-evidence is an error, much less one of constitutional magnitude.

Petitioner has failed to show that the state court rulings about the Holt Statement, Recorded Statement, and Transcript were an unreasonable application of clearly established federal law. He offers no facts demonstrating that providing the jury deliberation room with only that which was in evidence violated his due process rights. (ECF No. 1 at 7.) He does not cite any United States Supreme Court precedent that required Judge Petrolle to give jurors the Holt Transcript in the deliberation room. (*Id.*) Accordingly, the Court denies habeas relief as to Ground Two.

### D.  Ground Three: The Trial Court's Rulings On  Evidentiary Motions

Petitioner argues that the trial court improperly curtailed the defense's evidentiary presentation for two reasons: (1) Judge Petrolle limited Mr. McElveen's cross-examination by ruling that his prior statement to police was not a prior inconsistency regarding the perpetrator's jacket; and (2) Judge Petrolle prohibited the defense from calling Wilson's uncle as a witness and entering into evidence his checks to Wilson. (ECF No. 1 at 7, 8.)

#### 1.  Mr. McElveen's Cross-Examination.

Ground Three first claims that Judge Petrolle "erred by precluding counsel from cross-

examining [Mr. McElveen] regarding his failure to mention a jacket in his initial statement to the police, which he subsequently identified at trial." (ECF No. 1 at 7 ("Jacket Cross-Exam Claim").) Prior to trial, Mr. McElveen had not described or been asked to identify to police the perpetrators' clothing. However, during a mid-trial hearing outside the jury's presence, Mr. McElveen viewed the jacket that Wilson was wearing when arrested. *Alexander*, 2011 WL 6029980, at *2. Mr. McElveen asked to see the jacket's back. He identified it as one worn by a perpetrator. Then, in the presence of the jury, McElveen testified that the jacket looked "like one of the jackets one of the guys was wearing." *Id*. When asked on direct examination whether he was able to remember any of the clothing the robbers were wearing, Mr. McElveen said: "Not very clearly, no. I really didn't pay too much attention." (ECF No. 8-26 at 105.) Defense counsel expressed concern that the prosecutor would next ask Mr. McElveen to identify an item of clothing, after the witness had testified about inability to recall the perpetrators' clothing. (ECF No. 8-26 at 108-09.) Outside the jury's presence, the prosecutor showed State's Exhibit 51 to Mr. McElveen, who said it refreshed his recollection. Mr. McElveen said State's Exhibit 51 "looks like one of the jackets that one of them was wearing. I remember the design in the back." (ECF No. 8-26 at 110-11.) Satisfied that Mr. McElveen's recollection was sufficiently refreshed, Judge Petrolle permitted Mr. McElveen's examination to proceed. (*Id*. at 112.)

Co-Defendants' counsel, Janelle De Los Santos, Esquire and Erik Kaviar, Esquire, tried to cross-examine Mr. McElveen about his failure to identify State's Exhibit 51 in his prior statement to police. Co-Defendants' counsel asked the court to clarify the permitted scope of Mr. McElveen's cross-examination. In an exchange on the record, Judge Petrolle ruled that Mr. McElveen's prior statement to police was not a prior inconsistent statement with respect to the jacket:

> Counsel:    I would like to ask the witness if he identified the
>             green jacket in his statement to the police officers.

| | |
|---|---|
| Court: | Present his statement to him, give him an opportunity to read the statement. Then ask him whether he identified it in his statement to the police officer. But, let me ask you this question in fairness to the witness, was he given an opportunity to identify it? |
| Mr. Kaviar: | I believe not, Your Honor. |
| Court: | Well if he wasn't given an opportunity, if he wasn't asked the question, is this the jacket and he doesn't say no I didn't, there's no prior inconsistency. |

***

| | |
|---|---|
| Mr. Kaviar: | … The question [by police] [asked of Mr. McElveen] that is closest to [a] question [about clothing] is… ["]can you describe the actors that came in the store?["] And in that response, he doesn't identify the clothing. |
| Court: | What does he say? |
| Mr. Kaviar: | He gives physical descriptions. He says their heights. I'll read the response Your Honor. "They were all black males, two dark complexion, and one kind of light. They all had something covering their mouth and nose with either a scarf or their shirt. And one of the guys was about 6'1" and the other two were about 5'6" or 5'7"." |
| Court: | Does the officer ask anything about clothing? |
| Mr. Kaviar: | No. |
| Court: | I don't think it's a fair question, because I don't think anything there guides the witness to believe he should be describing clothing. The only reference is to the fact that they had something covering their faces, which goes to whether he can make a physical identification of them. But no one asked what they were wearing ... Therefore, it doesn't appear to be a fair prior inconsistent statement. Now that's subject to what you develop on cross examination. And if you feel that you've reached the point on cross |

> examination that you can again address this, I invite
> you to do that … [B]ut on the basis of what you
> have at this point, it's fair to conclude that he was
> responding by giving descriptions, the physical
> makeup of the individuals, not their clothes. The
> only reference to clothing is ... that he was
> indicating that something covered the face of each.
>
> Therefore, it's not a fair comment to attribute to him
> as being inconsistent with that.

(ECF 8-26 at 111-15 (referred to as "Prior Inconsistent Statement Ruling").) Thereafter, in the

presence of the jury, Mr. McElveen identified State's Exhibit 51 as the jacket worn by one of the

robbers. (ECF No. 8-26 at 118.) Cross-examination followed. (*Id*. at 118-32.)

The following day, Ms. De Los Santos attempted to re-visit the Prior Inconsistent

Statement Ruling. (ECF 8-27 at 47-49.) Judge Petrolle rejected counsel's second effort to

challenge Mr. McElveen's jacket identification as a statement inconsistent with his prior failure

to identify the jacket to police:

> I've already made the ruling. There is nothing natural about
> suggesting the color of a jacket or the existence of a jacket in the
> description that goes to height, weight and comment that faces
> were covered. Had there been mention of other clothing then
> certainly what you're saying would make it natural. There's
> nothing natural about that. That there is nothing in the description
> that involved clothing and it omitted the reference to the jacket.

(ECF 8-27 at 49.)

Petitioner raised the Jacket Cross-Exam Claim on direct appeal. *Alexander*, 2011 WL

6029980, at *4. The Appellate Division found the Claim "lacking in sufficient merit," not

warranting anything more than "brief comments" in its written opinion, *id*. at *8:

> [Q]uestions on the scope of cross-examination are left to the sound
> discretion of the trial court and reviewed for abuse of discretion. A
> claim of inconsistency requires a foundation; because nothing in the
> record indicates that Mr. McElveen was ever asked to describe or
> identify clothing worn by the perpetrators other than the black scarf,

> we cannot conclude the trial court abused its discretion in precluding
> this line of cross-examination.

*Id*. (internal citation omitted).

Similar to Grounds One and Two, the appropriate constitutional inquiry for Ground Three's Jacket Cross-Exam Claim is whether Judge Petrolle's Prior Inconsistent Statement Ruling resulted in a "complete miscarriage of justice or in an omission inconsistent with the rudimentary demands of fair procedure" such that Petitioner was denied "fundamental fairness at trial." *Hill*, 368 U.S. at 428; *Kontakis*, 19 F.3d at 120. A review of the record demonstrates that such is not the case here.

For example, a claim of prior inconsistent statement for use during cross-examination requires a foundation. N.J. R. Evid. 803(a)(1). Just as he failed to do at trial, Petitioner on habeas review has not pointed to anything in the record indicating that the police directly asked Mr. McElveen to describe the perpetrators' clothing. (*See*, *e.g.*, ECF No. 8-26 at 105-06, 108, 120.) Thus, there was no prior jacket-related statement by Mr. McElveen as to which his in-court testimony could have been inconsistent. Furthermore, New Jersey Rule of Evidence 611(a) confers "reasonable control" to trial judges with respect to the mode of interrogating witnesses. Petitioner has not shown that the Prior Inconsistent Statement Ruling abused that discretion. In particular, Judge Petrolle found nothing in the police post-robbery questions to Mr. McElveen that would have prompted the victim to "believe he should be describing [the perpetrators'] clothing." (ECF No. 8-26 at 115.) Thus, the record shows that Mr. McElveen's identification of State's Exhibit 51 was not inconsistent with his supposed prior failure to identify the jacket in his police statement. (*Id*. (Judge Petrolle: "[N]o one asked [the witness] what the[] [perpetrators] were wearing. Therefore, it doesn't appear to be a fair prior inconsistent statement").)

This record does not suggest any state court errors of a constitutional dimension or ones that caused a fundamentally unfair proceeding. To the contrary, Judge Petrolle expressly allowed

for the possibility that the court would allow defense counsel to cross-examine Mr. McElveen's in-court jacket identification with the content of his police statement -- "subject to what [defense counsel] develop[s] on cross examination … I invite you to do that." (ECF No. 8-26 at 115.) That is, Petitioner had the opportunity to do the very sort of cross-examination of which he now complains if he had established the proper foundation at trial. He did not do so. That does not make for any finding of constitutional violation on the part of the trial court.

Even if reasonable jurists could disagree with Judge Petrolle's ruling, the decision does not appear to violate a proper exercise of discretion on part of the trial court.  More importantly, the decision as to scope of cross-examination does not raise an issue of constitutional magnitude. Thus, this Court is compelled to conclude that there is no showing that the state court determinations "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Parker*, 567 U.S. at 40 (quoting 28 U.S.C. § 2254(d)).

Accordingly, Ground Three's Jacket Cross-Exam Claim is denied habeas relief.

### 2. Preventing A Witness From Testifying For The Defense And Not Admitting Certain Documents Into Evidence.

Petitioner next claims that Judge Petrolle erred in prohibiting the defense from (1) calling Wilson's uncle as a witness; and (2) entering into evidence certain checks given to Wilson by his uncle. (ECF No. 1 at 8 (collectively, "Cash Source Claim").)  At trial, Wilson gave testimony tending to explain Wilson's possession of the incriminating evidence -- the cigars, lighters and crumpled currency. *Alexander*, 2011 WL 6029980, at *3. As to the currency, he explained that the $200 in crumpled bills found in his pocket was the remainder of a $1,250 gift given to him by his

uncle in December 2007. He produced the checks his uncle had written, and they were marked for identification. *Id.*; ECF No. 8-28 at 116-18. Defense counsel attempted to present Wilson's uncle as a witness. Counsel wanted to elicit testimony from him that the source of the money found on Wilson was, in fact, the remaining proceeds from his uncle's checks. The court denied the defense's effort. (ECF No. 1 at 8; ECF No. 8-28 at 61-62 ("I won't permit that, sir. There doesn't appear to be anything that you're offering there that has any tendency in reason to prove or disprove any fact of consequence in this proceeding. The fact that people have money doesn't tend to explain anything at all").)

On direct appeal, Petitioner alleged error in Judge Petrolle's evidentiary rulings as to the "uncle's testimony about the checks and the checks themselves." *Alexander*, 2011 WL 6029980, at *4, *8. Unable to find that Judge Petrolle abused his discretion in excluding the checks or the uncle's testimony, the Appellate Division rejected the Cash Source Claim, citing New Jersey Rule of Evidence 403:

> The probative value of the uncle's gift as an explanation for the cash stuffed in Wilson's pocket months later was limited … [Furthermore,] [c]onsidering that Wilson also had merchandise from the deli in his pocket and that the cash register drawer was found in the car, even if the court erred we have no doubt that the verdict would have been the same if the checks and testimony had been admitted.

*Id.* at *8 (internal citations omitted).

The same legal analysis applicable to Grounds One and Two *supra* again governs the Cash Source Claim here. Judge Petrolle's decision not to admit the uncle's testimony or the checks did not result in a "complete miscarriage of justice or in an omission inconsistent with the rudimentary demands of fair procedure." *Hill*, 368 U.S. at 428; *Kontakis*, 19 F.3d at 120.

This record demonstrates that the trial court committed no errors of a constitutional

dimension and the trial process was fundamentally fair. Petitioner has not shown that the state court determinations "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Parker*, 567 U.S. at 40 (quoting 28 U.S.C. § 2254(d) ). He has not cited any United States Supreme Court precedent that required Judge Petrolle the admit the uncle's testimony or checks into evidence. Accordingly, Ground Three's Cash Source Claim is denied habeas relief

For all of the foregoing reasons, Ground Three of the Petition is denied in its entirety.

**E.  Ground Four: The Sentence Imposed Was Manifestly Excessive,**

Finally, Petitioner contends that his sentence was manifestly excessive. (ECF No. 1 at 8 ("Excessive Sentence Claim").)  Petitioner asserted this claim on direct appeal. *Alexander*, 2011 WL 6029980, at *4. The Appellate Division noted that Petitioner's thirty-year discretionary extended term was imposed under NERA. *Id*. at *9 (under NERA, an appellate court "may not disturb a sentence if the criteria for the extended term stated in N.J.S.A. 2C:44–3a are established and the record supports the trial court's findings and balancing of any danger to the public and the aggravating and mitigating factors set forth in N.J.S.A. 2C:44-1"). In Petitioner's case, the Appellate Division found "no deviation that would permit us to disturb this sentence." *Id*. Specifically, the court noted:

> There was no dispute that defendant, who was twenty-seven when these serious crimes were committed in March 2008, was eligible for a discretionary extended term. N.J.S.A. 2C:44–3a. When defendant was sentenced on August 10, 2009, he had more convictions than the statute requires …
>
> ***

> In fixing this thirty-year term, the court relied on findings beyond those essential to imposition of this extended term: 1) defendant's crimes demonstrated a pattern of escalating criminality and violence, culminating in this armed robbery, which represented a danger to the public and reflected the need to deter defendant; 2) defendant had more than two prior convictions; and 3) defendant had violated probation on four occasions. The court [found] … a need for deterrence and a risk of recidivism ...
>
> ***
>
> [T]he sentence is a reasonable one entitled to our deference. Because the sentence is consistent with the sentencing guidelines and supported by the record, it does not shock the judicial conscience.

*Alexander*, 2011 WL 6029980, at *10-11.

On June 17, 2011, Petitioner filed a PCR petition, in which his sole claim was that of excessive sentence. (ECF No. 8-11 at 5.)  The PCR court heard argument on May 30, 2013 and issued an oral opinion denying PCR. (*See* ECF No. 8-13.) Although Petitioner's claims "were all matters that were available for review on appeal, and either were reviewed or were eschewed by counsel on appeal," the PCR court nevertheless considered Petitioner's claims and found that they were without merit. *Alexander*, 2015 WL 2457985, at *2. The court also ruled that an evidentiary hearing was not required. *Id.*  Petitioner appealed denial of PCR. *Id.* On May 28, 2015, the Appellate Division affirmed denial of PCR. *Id.* at *1.

This Court finds that the Excessive Sentence Claim does not merit habeas relief.  Short of a claim that a sentence constitutes cruel and unusual punishment prohibited by the Eighth Amendment, or that it is arbitrary or otherwise in violation of due process, the legality and length of a sentence present questions of state law over which this Court has no jurisdiction under § 2254. *See Chapman v. United States*, 500 U.S. 453, 465 (1991) ("the court may impose ... whatever punishment is authorized by statute for [an] offense, so long as that penalty is not cruel and unusual, and so long as the penalty is not based on an arbitrary distinction that would violate the

Due Process Clause of the Fifth Amendment"); *Gibbs v. Bartkowski*, No. 11-1137 (NLH), 2018 WL 2002786, at *15 (D.N.J. Apr. 30, 2018) (applying *Chapman* to unconstitutional sentence claim raised in a § 2254 petition), *reconsideration denied*, 2018 WL 3201782 (D.N.J. June 29, 2018).

Petitioner's thirty-year sentence for first-degree robbery is not unconstitutional under the foregoing standards. *See Velez v. Lagana*, No. 12-0430 (DRD), 2015 WL 2344674 at *12 (D.N.J. May 14, 2015). First, the record demonstrates that this sentence was not arbitrary and was instead based on the "risk that the defendant will commit another offense," the "extent of the defendant's prior criminal record and seriousness of the offenses of which he has been convicted," the "need for deterring the defendant from violating the law," and that the "aggravating factors substantially outweigh the mitigating factors." (ECF No. 8-3 at 3.) In addition, the sentence imposed on Petitioner is within the permissible sentencing range under NERA on the robbery charge. N.J. Stat. Ann. § 2C:44-3a.

The New Jersey courts' adjudication of this issue was therefore neither contrary to nor unreasonable application of, clearly established Supreme Court precedent. *See Velez* at *12 ("Absent a claim that a sentence constitutes cruel and unusual punishment prohibited by the Eighth Amendment, or that it is arbitrary or otherwise in violation of due process, the legality and length of a sentence are questions of state law over which this Court has no jurisdiction under § 2254"). Petitioner cites to no constitutional provision or federal law to support his Excessive Sentence Claim. Habeas relief on Ground Four is therefore denied.

## IV.    CERTIFICATE OF APPEALABILITY

A petitioner may not appeal from a final order in a habeas proceeding unless he has "made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's

resolution of his constitutional claims or that jurists could conclude that the issues presented here are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). Because Petitioner has failed to satisfy this standard, the Court will deny him a certificate of appealability.

## V.    CONCLUSION

For all of the foregoing reasons, Petitioner's habeas Petition is denied. A certificate of appealability will not issue. An appropriate order accompanies this Opinion.

<u>April 29, 2019</u>                                     s/ John Michael Vazquez
Date                                                          JOHN MICHAEL VAZQUEZ
                                                                 United States District Judge